UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

FREDDIE L. WILLIAMS,

    Plaintiff,

v.        CIVIL ACTION NO.    4:22-cv-53

RESURGENT CAPITAL SERVICES, LP,

SERVE:    Corporation Service Company, Registered Agent
           100 Shockoe Slip Fl 2
           Richmond, VA 23219

    Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Freddie L. Williams, by counsel, and as for his Complaint against Defendant Resurgent Capital Services, LP ("Resurgent" or "Defendant"), he states as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.

2. In this case, the Defendant, Resurgent, erroneously furnished inaccurate, derogatory information that was reported on Plaintiff's credit reports. After Plaintiff disputed the inaccurate information with the consumer reporting agencies ("CRAs") Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union"), Defendant failed to correct Plaintiff's credit reports. That violated 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

4. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2); Plaintiff resides in this District and Division and all relevant facts regarding his injuries occurred here.

**PARTIES**

5. Plaintiff is a natural person residing in the state of Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Defendant Resurgent Capital Services, LP is a non-governmental limited partnership with its principal office in Greenville, South Carolina and regularly does business in the Commonwealth of Virginia through its registered agent.

7. Defendant is part of a family of companies that are related in ownership through multiple layers designed to hide such connection. These include the orginating "creditor," Credit One Bank, and the multiple layers of assignees, including LVNV, which claimed in a collection lawsuit to own debt owed by this Plaintiff.

8. "LVNV Funding outsources the management of its portfolio of accounts to a company called Resurgent Capital Services. Resurgent Capital Services is a licensed third-party debt collector…" (LVNV Funding, *Learn More about LVNV Funding,* https://www.lvnvfunding.com (last visited Apr. 29, 2022)).

9. Defendant is a "Furnisher" governed by 15 U.S.C. § 1681s-2 as it contracts with the national consumer reporting agencies to report LVNV (and other) accounts to consumer credit reports and handles FCRA dispute investigations directly and on behalf of its corporate sublings (such as LVNV here).

## FACTUAL ALLEGATIONS

10. In roughly August 2020, Plaintiff obtained a copy of his credit report from each of the three consumer reporting agencies, Equifax, Experian, and Trans Union. Upon receipt, Plaintiff discovered that Defendants Equifax and Trans Union were each reporting a derogatory Credit One account ("Account") that did not belong to him.

11. The Account was identified as belonging to LVNV and as having been opened in December of 2017 and sold to LVNV Funding in August of 2018.

12. According to Defendant and its related entity, LVNV Funding, the account was purchased first by Defendant and then assigned to and through several layered related paper entities until ending up technicaly "owned" by LVNV Funding.

13. Plaintiff filed an earlier, related lawsuit against LVNV, alleging that it was responsible for the inaccurate credit reporting at issue in this action as well (The "LVNV Lawsuit").

14. In the LVNV Lawsuit, LVNV claims that Resurgent did all of the credit reporting to Equifax and TransUnion, as well as the credit dispute investigations at issue in this Action.

15. Defendant repeatedly lied to Plaintiff in falsely representing that the collection contacts it was making was made by LVNV, which turns out to have zero employees.

16. Plaintiff never opened the Account, nor has he ever used a Credit One credit card.

17. The Account was opened under the name "Freddie Williams" and was associated with the address: 317 Settlers Landing Rd., Hampton, Virginia.

18. Plaintiff has never lived at that location, nor has he even lived in Hampton, Virginia.

19. Defendant had by then obtained Plaintiff's personal identifying information, which it then improperly added to its internal records as if they had been originally connected to the account application.

20. Discovery will show that Defendant obtained this information through "skip-trace" searches, when Plaintiff contacted it to make his dispute and because it had also requested, obtained and used the Plaintiff's consumer report.

21. Plaintiff filed a police report and initially disputed the Account with Equifax and Trans Union.

22. Plaintiff also disputed the Account directly with LVNV. Rather than conducting an investigation into the Account, LVNV used Plaintiff's address from his letter to sue him in Newport News General District Court.

23. This dispute was tried – with witnesses and documents – and considered on its merits by the Virginia state court. The Court entered a directed verdict at the close of LVNV's case and found for Mr. Williams – that this account was not his.

24. Plaintiff disputed a second time to Equifax and Trans Union in writing on February 18, 2021, including the fact that ownership of the Account was being litigated in Virginia state court.

25. Defendant again verified and continued to report the account as belonging to Plaintiff.

***The CRA Defendants Forwarded Plaintiff's Disputes to Resurgent, Which Did Nothing***

26. In each instance in which Plaintiff disputed the inaccurate credit information with the CRAs, the CRAs forwarded Plaintiff's disputes to Defendant using an electronic system called

"e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to CRAs.

27. e-Oscar is also the system by which Resurgent has agreed it will accept such consumer disputes from the CRAs.

28. Under such circumstances, Resurgent became obligated under the FCRA to investigate Plaintiff's disputes.

29. Resurgent received notice from Equifax and Trans Union of Plaintiff's dispute.

30. Resurgent failed to reasonably reinvestigate Plaintiff's disputes that it received. Instead, it simply had them electronically processed y an overseas outsource vendor who did nothing more than "verify" that its previously reported false information should continue.

### *Defendant's Violations Were Willful*

31. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

32. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

33. Similarly, Defendant Resurgent has had actual notice of establish law defining its duties under § 1681s-2(b). The leading case in this regard is the Fourth Circuit's decision, *Johnson v. MBNA Am. Bank, NA*. 357 F.3d 426 (4th Cir. 2004). *Johnson* and its progeny long ago

established that the § 1681s-2(b)(1)(A) directive to furnishers to "conduct an investigation with respect to the disputed information" required a "reasonable investigation," that is, a "careful" or "searching inquiry," as opposed to a "superficial" one, "to determine whether the disputed information can be verified." *Johnson*, 357 F.3d at 430–31.

34. This standard for an investigation requires more than a superficial data conformity check of verifying that the data contained in a furnisher's computer records is the same as that reported to the CRAs. In a decision adopting the Fourth Circuit's *Johnson* standard, the Court of Appeals for the Ninth Circuit explained:

> The Fourth Circuit's reasoning in *Johnson* is entirely persuasive. *By its ordinary meaning, an "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute.* Moreover, like the Fourth Circuit, we have observed that "a primary purpose for the FCRA [is] to protect consumers against inaccurate and incomplete credit reporting." *Nelson*, 282 F.3d at 1060. *A provision that required only a cursory investigation would not provide such protection; instead, it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry.*

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162–63 (9th Cir. 2009). (emphasis added).

35. Resurgent also had actual knowledge of the Fourth Circuit's decision, *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 146–47 (4th Cir. 2008), as well as cases that thereafter adopted and followed it, which held that a furnisher that fails to report a debt it knows is disputed as disputed would violation § 1681s-2(b).

36. Resurgent has been sued over 700 times in federal court for consumer credit violations, with many of these actions brought against it under the FCRA. This is in addition to the many consumers who have sued LVNV alone.

37. Further, Resurgent has received nearly 2,000 consumer complaints through the CFPB regarding its inaccurate credit report and dispute procedures.

38. Despite the notice and judicial, regulatory and public interest criticism, Resurgent has refused to change its dispute investigation process because it would cost too much money to do so.

39. A subsequent check of Plaintiff's consumer reports revealed that each of the CRAs were reporting the Resurgent account as belonging to him.

## CAUSES OF ACTION

### COUNT I:
### VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(1)(A) and (B)

40. On at least one occasion within the past two years, by example only and without limitation, violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

41. On one or more occasions within the past two years, by example only and without limitation, violated 15 U.S.C.§ 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

42. Based on the manner in which the CRAs responded to – or did not respond to Plaintiff's disputes, representing that furnisher(s) had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Equifax and Trans Union did in fact forward Plaintiff's dispute via an ACDV to .

43. Defendant understood the nature of Plaintiff's disputes when it received the ACDVs from, Equifax and Trans Union.

44. Notwithstanding the above, Defendant follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Defendant does is have its overseas outsource vendor review its own internal computer screens for the account and repeat back to the ACDV system the same information it already has reported to the CRAs.

45. When Defendant receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

46. As a result of violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

47. Defendant's FCRA violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

48. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against the Defendant, in addition to attorney fees and costs; prejudgment and postjudgment interest at the legal rate; injunctive and declaratory relief; and any other relief the Court deems just, equitable, and proper.

Respectfully submitted,
**FREDDIE L. WILLIAMS**

By  /s/ Leonard A. Bennett
Leonard A. Bennett, VSB#37523
Craig Marchiando, VSB#89736

CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiff*